Donald E. MALEC, Plaintiff,

v.

K. Sue SANFORD, John Barr, Daniel P. Letizia, Richard D. Klatzco, Allen W. Pisarek, Stephen Veitch, and Village of Oak Brook, Defendants.

No. 97 C 7877.

United States District Court, N.D. Illinois, Eastern Division.

March 7, 2000.

Kenneth A. Jatczak, John P. De Rose & Associates, Burr Ridge, IL, John P. DeRose, John P. DeRose and Associates, Burr Ridge, IL, Anthony T. Capua, John P. DeRose & Associates, Burr Ridge, IL, for Donald E. Malec, plaintiff.

Richard T. Ryan, Mark F. Smolens, Richard L. Jones, John Patrick Cleary, Flynn, Murphy, Ryan & Seyring, Chicago, IL, for K Sue Sanford, John Barr, Daniel P. Letizia, Richard D. Klatzco, defendants.

Richard T. Ryan, Mark F. Smolens, Richard L. Jones, Flynn, Murphy, Ryan & Seyring, Chicago, IL, for Allen W. Pisarek, defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Donald Malec, a former Village of Oak Brook police officer, alleges three causes of action against the various defendants in his second amended complaint. In our prior opinion, (R. 23, Op. of Mar. 25, 1999 ("*Malec I*")), we denied the defendants' motion to dismiss after concluding that they were not entitled to absolute or qualified immunity and that Malec had successfully stated a claim for relief. Currently before the Court is a motion for summary judgment brought by three of the individual defendants, K. Sue Sanford, John Barr, and Daniel Letizia, all members of the Village's Board of Fire and Police Commissioners. At issue is whether Malec has produced sufficient evidence to sustain his First Amendment and due process claims against these three defendants.[1] After thoroughly canvassing the record, we conclude that Malec has not sustained his burden with respect to Sanford, Barr and Letizia and direct judgment in their favor. However, before beginning our analysis of the defendants' summary judgment motion, we pause to offer some guidance on the proper method of presenting such motions.

### SUMMARY JUDGMENT PLEADINGS

Lately, we have discerned a trend of poorly presented and argued summary judgment motions. We use this case as a vehicle to inform lawyers appearing before this Court what precisely we expect from summary judgment practitioners.

The purpose of summary judgment proceedings is to identify cases that can be resolved without a trial. Thus, we have

---

1. Count I of Malec's second amended complaint alleges a violation of his First Amendment rights by all of the defendants; Count III asserts a procedural due process claim against all of the defendants. On the other hand, Count II, a claim based on the Americans with Disabilities Act, is against the Village only and, therefore, is not at issue here.

one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. The parties, in turn, bear a concomitant burden to identify the evidence that will facilitate this assessment. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994) (citations omitted). The Northern District promulgated Local Rules 56.1(a) and 56.1(b), formerly Local Rules 12M and 12N, delineating the obligations of parties in summary judgment proceedings. It bears noting that we "have broad discretion to enforce rule [56.1]," *Feliberty v. Kemper Corp.*, 98 F.3d 274, 278 (7th Cir.1996), and that the Court of Appeals for the Seventh Circuit regularly upholds strict enforcement of Local Rule 56.1. *See, e.g., Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir.1995) (citing cases).

## A. Statement of Material Facts

Statements of material facts are the vehicle through which counsel identifies the relevant facts and the evidence establishing those fats. There are three separate types of statements governed by Rule 56.1: the movant's statement, the nonmovant's response and statement of additional facts, and the movant's response to the additional facts.

### 1. The Movant's 56.1 Statement

Local Rule 56.1(a)(3) requires a movant to submit a statement of undisputed material facts that, according to the movant, entitles that party to judgment as a matter of law.

> The statement ... shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting material relied upon to support the facts set forth in that paragraph.

Rule 56.1(a)(3). Three operative concepts animate this rule: facts, short, and specific.

First, a movant's 56.1(a) statement should contain *only* factual allegations. It is inappropriate to allege legal conclusions in a 56.1(a) statement on the off-chance that one's opponent might not file a correct response. (*See, e.g.,* Malec's Statement at ¶ 35 ("The actions of Defendants and each of them violated the [D]ue [P]rocess [C]lause of the Fourteenth Amendment.").) This approach invariably results in a motion to strike and, thus, wastes the judicial time that summary judgment was intended to save.

■ Additionally, the 56.1(a) statement should be limited to *material* facts, that is, facts pertinent to the outcome of the issues identified in the summary judgment motion. For example, in this case, both parties' statements contain factual allegations regarding Malec's disability. Although Malec's disability is pertinent to his case against the Village, it is not in any way relevant to this motion because he has not asserted an ADA claim against these defendants.

Second, the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response. Again, it is inappropriate to confuse the issues by alleging multiple facts in a single paragraph in hopes of one's opponent missing one.

Finally, "specific reference" means including proper Bluebook citations to exact pieces of the record that support the factual contention contained in the paragraph. In other words, citations must include page (or paragraph) numbers, as opposed to simply citing an entire deposition, affidavit, or other exhibit document: "[D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes." *Waldridge*, 24 F.3d at 922. Factual allegations not properly supported by citation to the record are nullities.

■ In the same vein, supporting documents submitted with a motion that are not referred to in the statement of facts will be ignored. Experience has amply demonstrated the danger of making arguments a party has not advanced by relying on exhibits not explained by either side.

### 2. The Nonmovant's 56.1(b) Response to the Movant's 56.1(a) Statement and 56.1(b) Statement of Additional Facts

Local Rule 56.1(b)(3) governs the nonmovant's response to the movant's statement of facts and the nonmovant's statement of addi-

tional facts. This rule may be the most important litigation rule outside statutes of limitation because the consequences of failing to satisfy its requirements are so dire. Essentially, the penalty for failing to properly respond to a movant's 56.1(a) statement is usually summary judgment for the movant (at least if the movant has done his or her job correctly) because the movant's factual allegations are deemed admitted. In contrast, a movant's failure to submit a proper 56.1(a) statement results in dismissal of the motion; in other words, maintenance of the status quo.

■ Local Rule 56.1(b)(3)(A) requires the nonmovant's response to contain

a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.

Thus, a general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial. If the cited material does not clearly create a genuine dispute over the movant's allegedly undisputed fact, the nonmovant should provide an explanation. Also, the nonmovant's response should mirror the movant's statement in form (*i.e.* paragraph one of the response should correspond to paragraph one of the movant's statement). We cannot stress the importance of this document enough: a nonmovant's failure to adhere to these requirements is equivalent to admitting the movant's case.

Finally, a Rule 56.1(b)(3)(A) response is not the place for purely argumentative denials. Here, for example, Malec denies Sanford's allegation "that he was 'formerly a police officer' but admits that he is a police officer employed by the Village of Oak Brook, Illinois who has been relieved of duty by the Police Chief." (Malec's 56.1(b) Resp. at ¶ 1.) Frankly, we don't see the difference and, if there is a difference, Malec's response is false because we know Malec was fired pursuant to the recommendation of a psychiatrist that he is unfit for duty.

Local Rule 56.1(b)(3)(B) corresponds to Rule 56.1(a)(3): it sets out requirements for

the nonmovant's statement of additional facts that are identical to the obligations imposed on the movant's statement of facts. Specifically, the statement of additional facts must set forth, in short numbered paragraphs, facts that require the denial of summary judgment (in other words, *material* facts), supported by specific references to the record. Because the standard is identical to that imposed by Rule 56.1(a)(3), we refer readers to our discussion of that provision. We emphasize, however, that Rule 56.1(b)(3)(B) "provides the *only* acceptable means of ... presenting additional facts." *Midwest Imports,* 71 F.3d at 1317 (emphasis added). Simply providing additional facts in one's responsive memorandum is insufficient to put those facts before the Court. *Id.*

### 3. Movant's Response to the Nonmovant's 56.1(b) Statement of Additional Facts

Predictably, the movant's response to the nonmovant's additional facts must satisfy the same requirements as the nonmovant's response.

If additional material facts are submitted by the opposing party pursuant to section (b), the moving party may submit a concise reply in the form prescribed in that section for a response.

Local Rule 56.1(a)(3) (final unnumbered paragraph). The sanction for failing to reply is identical to that imposed for failing to respond: admission of the opposing party's factual contentions.

### 4. Miscellaneous

■ Although the types of evidentiary material available to support a statement of facts are innumerable, the most common include affidavits, deposition transcripts, and business documents. We remind counsel that affidavits must be made on personal knowledge. *See, e.g., Joseph P. Caulfield & Assocs., Inc. v. Litho Prods., Inc.,* 155 F.3d 883, 888 (7th Cir.1998) (Affidavit testimony "that was necessarily speculative and lacking in foundation ... is insufficient."); Fed. R.Civ.P. 56(e). Thus, the portions of Malec's affidavit in which he attests to facts he could

not possibly know is improper. (*See, e.g.,* Malec Ex. 23, Malec Aff. at ¶ 26 ("At the various Executive Sessions to consider promotions to the rank of Sergeant, after review of my personnel file, the Board relied upon the recommendation of the Police Chief and each time passed me over for promotion.").)

■ Additionally, although the evidence supporting a factual contention need not be admissible itself, it must represent admissible evidence. For example, a deposition transcript is not usually admissible at trial but (obviously) may be used in support of summary judgment; but a hearsay statement made during a deposition does not constitute adequate evidentiary support for a factual proposition. *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir.1997) ("[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial, except that affidavits and depositions ... are admissible in summary judgment proceedings to establish the truth of what is attested or deposed.").

Further, "[t]he object of Rule 56(e) [governing summary judgment affidavits] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *LINC Fin. Corp. v. Onwuteaka,* 129 F.3d 917, 920 (7th Cir.1997). Again, Malec's affidavit, which is a virtual replica of his complaint, is improper. (*Compare* Second Am.Compl. at ¶¶ 55(a)–(d), 56, *with* Malec Ex. 23, Malec Aff. at ¶¶ 15–20) (identical provisions numbered differently.)

■ A final word about the 56.1 statement of facts. It is a document separate from the supporting memorandum; it is neither a supplement to nor a surrogate for the memo. Rule 56.1 statements should contain neither a narrative section nor a recitation of the summary judgment standards. (Sanford's 56.1(a)(3) Statement does both.) Likewise, 56.1 statements do not abrogate a party's obligation to recite its version of the facts in its supporting memorandum; it is inappropriate in one's memo to simply refer the Court to the 56.1 statement. The purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner: it is not intended as a forum for factual or legal argument.

## B. Supporting Memorandum of Law

The Local Rules impose only two explicit requirements on supporting memorandum of law: first, parties to summary judgment proceedings must file one, *see* Local Rule 56.1(a)(2) and (b)(2); and, second, it may not exceed fifteen pages without leave of the Court, *see* Local Rule 7.1. This Court's Standing Pretrial Order also instructs parties to "file a summary or chronology of relevant dates and events." In addition to these codified rules, the waiver doctrine and purely prudential considerations (*i.e.,* a desire to succeed in one's task) should inform counsel's approach to drafting a supporting memorandum. Waiver and prudence are closely related concepts; however, we recognize that waiver is a legal matter, while prudence is more a matter of personal judgment.

A memorandum in support of (or in opposition to) summary judgment preferably contains two major parts: a fact section and an analysis section. In turn, the analysis section should contain a review of the relevant legal standards supported by citation to caselaw and a thorough application of that law to the specific facts of the case.

### 1. The Fact Section

The purpose of the fact section is to provide the context of the case. As such, we strongly recommend organizing the facts chronologically. This section should inform the Court of the broad circumstances giving rise to the dispute but detail only those facts relevant to the motion. Thus, for example, here the fact section should include the broad contours of Malec's employment history, but need not narrate the minutia of his dealings with the pension board that ended his medical leave. That information simply is not relevant to the motion before us and only confuses the issues. On the other hand, the defendants should have included, but did not, a discussion of the Board's general decision-making process, the sources of its authority, and the considerations that informed its decision not to promote Malec.

Additionally, the nonmovant is advised to use this section to explicitly identify material factual disputes requiring a trial. Citations in the fact section should be to the 56.1(a) or (b) statement of facts only, unlike Malec's memorandum, which cites directly to pieces of the record (which his 56.1(b) statement of additional facts does not!). And, again, this section should recite only those facts relevant to the motion and those necessary for coherence.

### 2. The Analysis Section

Briefly, as to the legal standards part of the analysis section, cases from the United States Supreme Court and the Seventh Circuit Court of Appeals are binding on us. All other caselaw is persuasive, but not equally so: a recent en banc decision by a circuit court is far more persuasive than an old case decided by a district court that is not in our circuit. Furthermore, when the Supreme Court or the Seventh Circuit has decided cases on point, opinions by other courts are virtually irrelevant. For example, here the Seventh Circuit decided a case named *Hermes v. Hein*, 742 F.2d 350 (7th Cir.1984), which is precisely on point, legally and factually, with Malec's due process claim—thus, Malec's reliance on *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361 (9th Cir.1976), without even mentioning or trying to distinguish *Hermes*, is inappropriate.

■ Similarly, simply setting out the legal standards and citing caselaw is insufficient to support an argument in summary judgment. For example, in this case the defendants recite the general standard for qualified immunity, cite a Supreme Court case, and conclude without discussion that they are immune from this lawsuit.[2] Even worse, they set forth a purported legal rule—that reliance on advice by an attorney entitles them to immunity—without any supporting caselaw (or recitation in the fact section that counsel advised them in any manner). Neither tactic gives us much faith in the defendants' positions. Furthermore, un-

less painfully obvious what is being argued, both result in waiver. A legal standard, even if correct, is useless to us unless applied to the facts of the case, particularly if it is a broad legal standard (*e.g.*, the general two-factor test for qualified immunity with no reference to due process rights in promotion or First Amendment protection of public employees).

Finally, a word about organizing the analysis section. On occasion we have received briefs in which counsel refutes the movant's arguments in one section and, in a wholly separate section, supports his own position. For example, here, Malec attempts to address the defendants' contentions in a section titled "Moving Defendants' Arguments" and then, in a separate section, argues his own contentions. Obviously, we do not believe this is effective advocacy. Spreading a single issue over several sections of a brief demonstrates the lawyer's disorganization, either in logic or planning (we hope the latter). Instead, all contentions regarding a single claim should be in a single subsection. Thus, Malec should have addressed all of the defendants' First Amendment arguments, as well as his own First Amendment contentions, in the First Amendment section (which should have come after a complete explication of the facts and an analysis of relevant First Amendment caselaw).

### 3. Page Limits

It is improper to avoid the fifteen-page limit for memoranda by playing with the font, line spacing, or margins. Resort to these tactics is embarrassing, and we advise attorneys to instead edit their drafts or face possible sanctions. If, after rigorously editing one's work (*i.e.*, deleting repetitious matter, useless verbiage, and material that presents nothing more than counsel's indignance), a memorandum still exceeds the page limit, the proper course is to request leave to file an over-sized brief.

---

2. In fact, the defendants wrongly place the burden on Malec to establish that they are not entitled to qualified immunity. Ultimately he might have had to bear that burden, but not until they first demonstrated entitlement to that protection.

*Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 2000) ("Although qualified immunity is a defense to a § 1983 suit, the burden of meeting the elements of this two-part test rests on the plaintiff.").

Finally, attorneys appearing before this Court are hereby admonished that summary judgment submissions must strictly comply with Federal Rule 56, Local Rule 56.1, this Court's Standing Order, and the dictates of this opinion.

We turn now to the issues presented in this summary judgment motion.

## RELEVANT FACTS

We review the evidence in the record according to the familiar summary judgment standards. Specifically, we consider the evidence in the light most favorable to Malec and draw all reasonable inferences in his favor.

Malec became a Village of Oak Brook police officer in 1979. He was on medical leave from 1988 through 1994, when he resumed his duties as a patrol officer. In December 1995, Malec revealed allegedly improper handling of parking tickets by a fellow officer to the Village President, who advised Malec to inform the Village Manager, which he did. Shortly thereafter, in January 1996, local media began reporting on alleged corruption within the Village police department, including the alleged "fixing" of parking tickets.

In June 1996, Malec was twice suspended for two separate infractions. Specifically, he was suspended for three days for sexually harassing a coworker, and for two days for insubordination. Malec did not formally appeal either sanction, but wrote the chief a protest letter more than a month later. In any event, both suspensions were documented in his personnel file. Later, in October 1996, Malec was "replaced" (Malec's word-choice) as the Assistant Shift Commander by the police chief apparently because, during a September roll call, Malec became angry about the results of an internal investigation into the corruption allegations, threw down a chair, and left the roll call before being dismissed by the sergeant.

On April 30, 1997, Malec was passed over for promotion to sergeant by the Village's three-member Board of Fire and Police Commissioners, even though he had the highest score on the eligibility exam. Instead the Board promoted the officer with the second highest score. On May 8, Malec appealed that decision. The Board rejected the appeal as untimely. On June 5, 1997, Malec was again passed over for promotion; this time the Board chose the officer with the third highest score (or the fourth highest score prior to the April 30 promotion decision).

Sanford, Barr and Letizia, the defendants behind the current motion, constituted the Board that decided to promote officers ranked below Malec. When deciding who to promote, the Board considers only the top three ranked officers (based on the eligibility exam), and reaches a decision based on not only the officer's score, but also materials in his or her personnel file and the police chief's recommendation. Neither the exam rank nor the chief's recommendation is determinative of which officer will receive the promotion. The Board does not interview candidates.

The Board-defendants now renew their request for legislative and qualified immunity. Additionally, they argue that Malec cannot establish a First Amendment violation because they did not know about his allegedly protected activity. Finally, the defendants maintain that Malec's due process claim fails because he has produced no evidence that the Board always hired the highest-ranked officer and, thus, he cannot establish a property interest in the promotion to sergeant.

## ANALYSIS

We will grant the defendants' summary judgment motion only if the record reveals that there is no genuine issue of triable fact and that they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). To succeed here, the defendants must establish either that they are legally immune from this lawsuit or that Malec has not produced evidence creating a triable issue on his First Amendment and due process claims.

### A. Immunity

First, the defendants advance no new arguments in favor of their bid for legislative immunity and, therefore, we reject their

summary judgment motion on this issue for the reasons stated in *Malec I*. (R. 23.)

■ We also reject their request for qualified immunity. The defendants do not argue that they are immune from First Amendment liability and, therefore, such a contention is waived. As to the due process claim, the defendants do nothing more than cite *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), for the general proposition that qualified immunity exists and then conclusorily assert that they are entitled to it. (Sanford Mem. at 7–8.) Such treatment is insufficient to preserve the argument. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir.1995) ("[J]ust as a district court is not required to scour the record looking for a factual dispute, it is not required to scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case.") (quotation omitted). Likewise, they do not point to any caselaw supporting their contention that reliance on a lawyer's advice precludes § 1983 liability. (Sanford Mem. at 8.) Again, this Court is not in the position to prove adversaries' arguments for them. The defendants' summary judgment motion with respect to legislative and qualified immunity is denied.

## B. First Amendment

■ Malec's First Amendment claim is that the Board refused to promote him in retaliation for his report to the Village President and Village Manager that he believed a fellow officer was fixing tickets. This claim necessarily depends on Malec producing some evidence that the Board members knew he made such a report, otherwise it is logically impossible that the Board's decision was retaliatory.

Malec attempts to meet his burden by baldly asserting that his "[p]ersonnel [f]ile teemed with references to the investigation of the Oak Brook Police Department and his participation in it." (Resp.Mem. at 5.) However, instead of submitting his actual personnel file and directing our attention to those references, Malec cites a letter he received from the Assistant Village Manager explaining why parts of his file were not copied for him. (Malec Ex. 12, Letter from Crotty to Malec of 2/27/98.) Attached to that letter is the list of documents not provided to Malec, all of which have to do with medical and psychiatric exams of Malec or other confidential information. There is not one reference to the corruption investigation in either the letter or list.

Malec also cites a letter and a confidential memorandum written by the police chief; both referred to Malec's ticket fixing allegation. (Malec Ex. 13, Letter from Klatzco to Kraus of 3/24/97; Malec Ex. 14, Confidential Mem. of 5/16/97.) However, Malec does not establish that either document was in his personnel file, and we see no reason to presume that they were. Both would be considered "confidential documents," but neither appears on the list of documents the Village refused to copy for Malec. (*See* Malec Ex. 12.) Although the list notes a psychiatric referral letter dated March 24, 1997, that letter was to Dr. Ostrov. The letter Malec relies on to establish the Board's knowledge, however, is to Dr. Kraus. The list does not refer to any confidential memoranda whatsoever. Furthermore, the memorandum Malec cites was written after the April 30 promotion; therefore, it's not possible the Board saw that reference to Malec's ticket fixing allegations prior to making its decision.

Obviously, as Malec alleges and proves, the Board knew about the corruption investigation and the ongoing media coverage of that investigation. However, Malec has produced no evidence that the Board knew of his involvement in those events.

On the other hand, the defendants have submitted copious materials establishing that they did not know and did not consider Malec's ticket fixing allegations. For example, Sanford, Barr, and Letizia each testified via affidavit or deposition (or both) that they did not know Malec had made such an allegation at the time they made the promotion decisions. Additionally, the Board's promotion deliberations were recorded and transcribed. The transcripts show that the Commissioners refused to promote Malec because he had two major disciplinary actions against him, whereas the other candidates had none.

Further, one of the suspensions was for insubordination less than a year before, which the Commissioners believed was especially problematic for someone seeking a leadership position. Finally, the Board did not promote Malec because the police chief strongly recommended against it based on the September 1996 roll call incident, as well as Malec's extreme rigidity, inability to accept criticism, and often inappropriate interpersonal interactions. Not once was Malec's ticket-fixing report, or any other involvement with the corruption investigation, mentioned during the Board's deliberations.[3]

Because Malec has produced no evidence that these defendants knew about his allegedly protected activities, he cannot, as a matter of law, establish a triable issue of a First Amendment violation by Sanford, Barr, and Letizia. Therefore, we grant summary judgment in their favor on this issue.

## C. Due Process

 Malec's due process arguments are remarkably unclear and convoluted. At one point he seems to contend that the Board's failure to inquire more deeply into the facts behind his suspensions constitutes a due process violation, (Malec. Mem. at 3–4); elsewhere he seems to suggest that the Board's failure to question the veracity of the police chief's recommendation constitutes such a violation, (*id.* at 6). These contentions are frivolous.

In the body of the memorandum, Malec appears to rely on his free speech claim to set forth a due process violation. (Malec Mem. at 14 ("It is undisputed that a deprivation of free speech rights gives rise to a

Fourteenth Amendment due process violation."); *id.* at 15 ("Malec contends that these state officials, with impermissible motives, violated his right to free speech by repeatedly passing him over for promotion and denying him a hearing on the discipline imposed on him.").) If he is, that claim falls ,with the failure of the underlying First Amendment claim.

What is utterly missing, however, is any argument regarding count three of his complaint—that Sanford, Barr, and Letizia violated his due process rights by failing to promote him. Likewise, Malec's memorandum is devoid of any response to these defendants' contention that he did not have a predictable property interest in the promotion and, therefore, cannot attain relief under the Due Process Clause.

The record amply demonstrates that Malec has utterly abandoned any valid due process claim. In *Malec I*, we outlined for Malec precisely what was required of him to support this claim: evidence of a de facto promotional program. (*Malec I* at 3–4.) Furthermore, that opinion, as well as the defendants' memorandum, cites cases that explain due process in this context. Whatever the reason, Malec has waived his due process claim by failing to present any evidence (or argument) that he had a protected interest that these defendants violated. Therefore, we grant these defendants summary judgment on this claim.[4]

## CONCLUSION

For the reasons stated above, we deny the defendants' request for immunity, but grant summary judgment in their favor on Malec's

---

3. The defendants wholly ignore two legal arguments that logically arise from the pleadings. Specifically, it is not entirely clear that Malec's report constitutes protected activity in the First Amendment sense. Even less clear is whether Malec has established a nexus between his December 1996 report and the Board's April 30, 1997 decision. *See Thomsen v. Romeis,* 198 F.3d 1022, 1027 (7th Cir.2000) ("[T]o establish a § 1983 claim based on the First Amendment, a plaintiff must demonstrate that (1) his conduct was constitutionally protected and (2) his conduct was a 'substantial factor' or 'motivating factor' in the defendant's challenged actions.").

4. It is not even possible to perform an alternate analysis because Malec's due process contentions are so opaque; we simply cannot discern what he is complaining about, what he believes he should have gotten (a hearing? an interview? the promotion?), and why. Based on the complaint and the defendants' arguments, however, we believe there is no triable issue that Malec was entitled to the promotion. The defendants have established their authority to choose from the top three candidates and that historically the top-ranked candidate is not always promoted. Assuming Malec's beef is with the Board's failure to promote him, he has not demonstrated a triable issue that they were required to do so.

First Amendment and due process claims. (R. 32–1.) Because there are no claims remaining against these defendants, they are dismissed with prejudice from the lawsuit.

During the course of these summary judgment proceedings, counsel for all of the named defendants filed another summary judgment motion, this time on behalf of Stephen Veitch. (R. 40–1.) We hereby dismiss this motion without prejudice to its renewal as part of a comprehensive summary judgment motion on all the issues remaining in this lawsuit. The defendants' lackadaisical, piecemeal approach to litigation is wholly inappropriate and serves only to delay resolution (and needlessly increase the costs) of this lawsuit. Defendants apparently would have this Court issue several more opinions in this case without regard to any deadlines this Court has set for the filing of dispositive motions.

The only reason we are allowing any further summary judgment proceedings is that our neutral review of the undisputed facts leaves us with serious reservations about Malec's ability to present a viable claim requiring a jury trial. Thus, we deny Veitch's summary judgment motion without prejudice and invite counsel to submit a motion on behalf of all the remaining defendants that addresses the issues remaining in this case. We admonish counsel that we will entertain only one more dispositive motion, that it absolutely must comply with the local rules and the terms of this order, and that it must be filed on or before March 30, 2000, at 4:00 p.m.

A status hearing will be held in open court on March 31, 2000 at 9:30 a.m. to set a short briefing schedule for this motion. The parties are urged to once again fully exhaust all remaining settlement possibilities.