**Sandy LEWIS, Plaintiff–Appellant,**

v.

**James O'GRADY, in his official capacity as Sheriff of Cook County, Illinois, et al.,[1] Defendants–Appellees.**

**No. 87–2154.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 19, 1988.

Decided July 21, 1988.

Harvey Melinger, Chicago, Ill., for plaintiff-appellant.

Karen Dimond, Asst. State's Atty., Chicago, Ill., for defendants-appellees.

---

**1.** Pursuant to Fed.R.Civ.P. 25(d), James O'Grady, who succeeded Elrod in office during the pendency of this action, is substituted for Rich- ard Elrod in his official capacity as sheriff of Cook County, Illinois.

Before BAUER, Chief Judge, and FLAUM and KANNE, Circuit Judges.

KANNE, Circuit Judge.

The question on appeal concerns the reasonableness of a delay in the release of a defendant from custody after the basis for his detention had ended. Sandy Lewis was arrested and detained on an arrest warrant issued for another person. Lewis based his 42 U.S.C. § 1983 action for false arrest and imprisonment on the 11 or so hours he spent in custody after a judge determined that he was not the person named in the arrest warrant. He also brought a class action which was initially certified and later decertified. As a result of settlements made with some of the defendants and the dismissals of several other defendants, only Sheriff Elrod, in his official capacity, remained in the suit. The district court, following a jury trial, granted a directed verdict in favor of the sheriff. Lewis challenges the directed verdict, the dismissals of certain individual defendants and the class decertification order. We affirm the district court as to the dismissals and decertification and we reverse the lower court order granting a directed verdict and remand in order to allow a jury to determine whether the length of Lewis' detention was reasonable.

## I. BACKGROUND[2]

On Saturday, March 28, 1981, at about 9:30 p.m., Sandy Lewis was arrested by Chicago policemen for disorderly conduct involving drinking in public.[3] The officers ran a mobile computer check which indicated that there was an outstanding warrant in the name of "Murray Brown alias Michael Lewis" issued for bond forfeiture on an underlying offense of possession of controlled substances. Unknown to the arresting officers, the warrant that was displayed when they checked the mobile computer in their squad car had been recalled on December 5, 1980.

On the basis of the arrest warrant, Lewis was placed in Chicago police custody overnight. He was then sent by the police to Holiday Court early the next day, Sunday, March 29, 1981. Lewis was unable to post the $30,000.00 bond previously set on the Murray Brown warrant and was placed in the custody of the Cook County Department of Corrections ("CCDOC")[4] and transported to a central county jail located in Chicago.

At approximately 7:00 a.m., the following morning, Monday, March 30, 1981, CCDOC officers transported Lewis (by custodial bus along with approximately 50 other prisoners) to the Sixth District Courthouse of the Circuit Court of Cook County located in Markham, Illinois, a Chicago suburb. Lewis was delivered to Cook County sheriff's deputies and placed in the court lockup pending the call of his case. He then appeared before Judge Marovich at approximately 10:30 a.m. He was represented by the public defender who explained to the judge that Lewis' arrest, on the warrant for Murray Brown, was the result of a case of mistaken identity.[5] In order to make inquiries into Lewis' contentions, the judge returned Lewis to the court lockup while a routine identity investigation was completed.[6]

---

**2.** As part of the final pretrial order in the district court, the parties stipulated to the essential facts of this case. The trial produced no additional facts, with the exception of the issue of damages which is not relevant to this appeal.

**3.** This charge was later dismissed under an order of LFD (leave to file denied) entered on March 29, 1981, by the judge in Holiday Court.

**4.** The Sheriff of Cook County has custodial responsibility for prisoners held by the Cook County Department of Corrections.

**5.** Also at this time, the judge granted the public defender's motion to quash and recall the warrant against Murray Brown as it had been recalled over three months earlier on December 15, 1980.

**6.** The CCDOC had "tremendous problems" with inmates trading places with each other in the bullpen or lockup, resulting in inmates mistakenly being released. Since CCDOC prisoners were exchanging pieces of identification, police routinely made a fingerprint investigation before releasing a prisoner to make certain he was the same individual involved in the intake. Before releasing prisoners, they also checked to ensure that there was no other warrant or mittimus against the individual.

A deputy sheriff questioned Lewis about his personal history (his place of birth, parents' names, social security number, etc.) and determined that he was indeed Sandy Lewis and not Murray Brown. Following the investigation, Lewis was again brought before Judge Marovich who apologized for the mix-up, stating: "We have arrested the wrong man. We performed a thorough investigation. We determined that you are Sandy Lewis, you are not Murray Brown. We're very sorry about this." Lewis requested that the judge give him something to prove he was not Murray Brown, because he had been confused with Brown before. The judge filled out and gave Lewis a defendant custodial sheet indicating that "this party Sandy Lewis is not Murray Brown."

After appearing before Judge Marovich the second time, Lewis was sent back to a cell to await transportation to the jail.[7] Two daily CCDOC custodial buses transport prisoners for the one-hour trip between the Markham branch court and the jail. On March 30, the first bus left the court by 1:30 p.m.—before Lewis made his final appearance before Judge Marovich. Consequently, Lewis had to wait for the second bus, which left at approximately 6:00 p.m. He remained in CCDOC custody until his ultimate release at about 10:00 p.m.

Lewis brought suit for false arrest and imprisonment under 42 U.S.C. § 1983 against the City of Chicago, four individual policemen, Richard J. Elrod (both individually and in his official capacity as Sheriff of Cook County, Illinois), Phillip Hardiman (Executive Director of the Cook County Department of Corrections) and Frank Jones (Assistant Supervisor of Courtroom Services for the Sheriff of Cook County). The City of Chicago and the individual police officers (Mark Tully, Fred Eckles, Patrick Lynch and Edward Lanuto) were named solely in Lewis' claim for false arrest. They entered into a settlement with Lewis for $12,500.00 and were dismissed from the case.

## II. DIRECTED VERDICT

A jury trial was held before Judge Duff on Lewis' § 1983 false imprisonment claim against Richard Elrod in his official capacity as the Sheriff of Cook County. At the close of Lewis' case, the court granted a directed verdict in favor of Sheriff Elrod. Lewis appeals.

This court has determined that "[i]n reviewing a district court's grant of a motion for directed verdict ... the standard to be applied is the same as that applied by the trial court." *North v. Madison Area Association for Retarded Citizens*, 844 F.2d 401, 403 (7th Cir.1988); *Panter v. Marshall Field & Co.*, 646 F.2d 271, 281 (7th Cir. 1981), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981).

It is clearly established that the judge decides the question "not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it...." *Gunning v. Cooley*, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720 (1930), (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1871)); *North*, slip op. at 3; *Van Houdnos v. Evans*, 807 F.2d 648, 650 (7th Cir.1986).

Since directed verdicts raise only a question of law, the standard of review used by the court of appeals is *de novo*. *North*, at 403; *Webb v. City of Chester, Illinois*, 813 F.2d 824, 827 (7th Cir.1987); *McMahon v. Eli Lilly & Company*, 774 F.2d 830, 832 (7th Cir.1985).

■ In granting the directed verdict in favor of Sheriff Elrod, the district court

---

7. The branch court at Markham, which is officially the Sixth District of the Cook County Circuit Court, has an "administrative" procedure which calls for returning discharged prisoners to the CCDOC jail in Chicago for processing prior to release, regardless of the reason for their discharge.

It is noteworthy that although the First and Fourth Districts follow the same procedures as the Sixth District, the Second, Third and Fifth Districts employ a telephone check before releasing discharged prisoners and do not require the released prisoner to be returned to the CCDOC unless he wants to reclaim personal possessions.

determined that no reasonable jury could have found in Lewis' favor. Lewis disagrees and asks that he be allowed to present his case to a jury.

Lewis challenges the sheriff's practice of returning discharged prisoners to the jail. He advocates that since he was no longer being held on any charge, he was effectively rearrested when he was returned to CCDOC custody. He maintains that *any* delay constituted an improper arrest since it was without probable cause.

Lewis asserts that once the pending criminal charges are disposed of favorably to a defendant—whether by dismissal of the charges, the quashing of an indictment or warrant or through a judicial determination of "not guilty"—a jailer has no legal authority for continued detention.

Lewis cites Ill.Anno.Stat. Ch. 75 ¶ 4 which reads, in pertinent part:

> The warden of the jail shall receive and confine in such jail *until discharged* by due process of law, all persons who are committed to such jail by any competent authority (emphasis added).

Lewis interprets the statute as a mandate, requiring the release of a prisoner after the sheriff has lost his authority to hold the person. This is the point at which Lewis' theory begins to weaken and ultimately fails. It matters significantly whether the sheriff loses authority to hold the person because a judge *ordered* a release or because the sheriff made an *administrative* determination that the individual should be freed. In Lewis' case, he does not make a distinction between judicial and administrative discharges. We do.

While there may be a glimmer of logic to Lewis' argument, it is an impossible interpretation in practical terms. Lewis was never officially ordered discharged by the state judge. The judge merely indicated that the man in custody was Sandy Lewis and not Murray Brown—he did not *discharge* him, but returned him to the sheriff's custody. Lewis admitted that the state court judge neither ordered him released nor told him when or where he would ultimately be released. Judge Duff eventually ruled that the state judge's notation on the custodial sheet did not constitute a "discharge." [8] His release was ultimately the result of an administrative determination rather than a judicial determination.[9]

It is critical to note that Lewis was not judicially released or discharged but was set free only after certain administrative steps to verify his identity had been taken.

The district court found that the sheriff is given wide discretion in releasing a discharged prisoner. *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed. 2d 447 (1979); *Duckworth v. Franzen*, 780 F.2d 645, 653–56 (7th Cir.1985). As Judge Duff wrote, "the sheriff was free to exercise his discretion in processing Lewis for release" because judges do not ordinarily direct the sheriff as to when and how to release a prisoner.

In *Llaguno v. Mingey*, 739 F.2d 1186, 1196 (7th Cir.1984), this court ruled that considerations other than the time of detention should be taken into account in assessing whether a delay was reasonable. We held that "[o]ther factors may include the reasons for delay, whether delay was justified by the administrative steps that were necessary to be taken, such as transportation, booking and filing charges, and the number of people to be processed." *See Sanders v. City of Houston*, 543 F.Supp. 694, 700–02 (S.D.Tx.1982).

In *Dommer v. Hatcher*, 427 F.Supp. 1040 (N.D.Ind.1975), *rev'd on other grounds*, 653 F.2d 289 (7th Cir.1981), we adopted the 24–hour guideline of *Sanders*, where the

---

8. Lewis claims that the judicial acts of quashing the warrant against Murray Brown on March 30 and of dismissing the disorderly conduct charges against him by order of LFD on March 29, constitute a judicial determination of discharge and consequently leave no legal basis for his continued detention.

9. Lewis submits that the "administrative procedures" followed by the sheriff were not only unreasonable, but unconstitutional. Specifically, he contends that returning him to the custody of CCDOC rather than releasing him immediately violated his fourth and fourteenth amendment rights. Because an investigation determined that there were no charges against him, he argues that his right to be free was even better established than that of a random man on the street.

court found that "administrative steps" include not only transportation, booking and filing, but also completing paperwork, taking fingerprints, etc., and that the city should be able to complete these within 24 hours. This court has further held that a detention of more than four hours, while not necessarily unconstitutional, requires "an explanation." *Moore v. Marketplace*, 754 F.2d 1336, 1351 (7th Cir.1985); *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 437 (7th Cir.1986).

Both *Moore* and *Gramenos* (and the majority of other cases) address the reasonableness of the delay between an arrest and either a release or an appearance before a magistrate. While this is somewhat different than the delay in administrative processing such as Lewis alleges, the cases are clearly analogous.

The plaintiff in *Gramenos* was arrested and sought compensation for the four hours and twenty minutes he was held by the police. We remanded the case in order to allow the jury to consider whether the detention was excessive. Judge Easterbrook wrote:

> It is premature to say how long is too long under the fourth amendment. On remand the police should explain what must be done after an arrest for shoplifting and why reasonably diligent officers need more than four hours to do it.

*Gramenos*, 797 F.2d at 437.

Here, the defendant explained that Lewis was detained because the first CCDOC bus returning to the jail left before his identity was verified and he had to wait five hours for the next available bus. Additionally, the sheriff claims that it "takes some time to sort out" the approximate 600–800 prisoners who are returned from court each day because the CCDOC [jail] covers fifty-two acres and consists of several buildings.

We recognize that the administrative tasks incident to a release of a prisoner from custody may require some time to accomplish—in this case perhaps a number of hours. Reasonable time must be allowed for such matters as transportation, identity verification, and processing. It is virtually impossible to establish an absolute minimum time to meet all potential circumstances which might exist. What is a reasonable time for detaining a prisoner in custody is a question best left open for juries to answer based on the facts presented in each case. In the instant case, a reasonable jury could find that the "administrative" delay in Lewis' release was unreasonable. Consequently, the district court's order granting a directed verdict was improper.

It is for a jury to determine whether the 11 hours it took the sheriff to discharge Lewis was reasonable. Since the jury did not have an opportunity to consider this issue, the case must be remanded.

## III. DISMISSAL OF INDIVIDUAL DEFENDANTS

Lewis sued Elrod and Hardiman for false imprisonment based on their implementation and approval of the CCDOC practice which resulted in his detention. He sought recovery from Jones for detaining him after his discharge. Lewis appeals the summary judgments granted to Phillip Hardiman, Frank Jones, and Richard Elrod (in his individual capacity).

As Executive Director of the CCDOC, Phillip Hardiman established the policy of returning discharged prisoners to the CCDOC unless the judge ordered an immediate release from the courtroom. After determining that "the CCDOC has nothing to do with the procedure Court Services officers actually use in releasing prisoners," the court ruled that "Hardiman therefore had no involvement in the alleged wrong to plaintiff, and he can not be liable in damages under 42 U.S.C. § 1983." *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983).

After Hardiman was dismissed, the only remaining defendants were Frank Jones and Sheriff Elrod. These defendants sought summary judgment two weeks before trial and the court denied the motion as untimely. The defendants subsequently renewed their motion at the start of the trial, again presenting the affirmative defense of qualified immunity. After several hours of oral arguments, Judge Duff found that Jones and Elrod (individually) were "entitled to summary judgment on the basis of their qualified immunity." Conse-

quently, both Jones and Elrod, in his individual capacity, were removed from the case by summary judgment on May 13, 1987.

■ Lewis claims that Jones and Elrod were not entitled to a qualified immunity defense because they should have known that their conduct was impermissible from the pre–1981 cases that held law enforcement officials liable for actions resulting in the arrest or detention of persons without probable cause. *See Murray v. City of Chicago*, 634 F.2d 365, 366 (7th Cir.1980).

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) mandates that public officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Wade v. Hegner*, 804 F.2d 67, 70 (7th Cir.1986); *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985).

This court recently reinforced *Harlow's* approach to qualified immunity in *Conner v. Reinhard, et al.*, 847 F.2d 384, 388 (7th Cir. May 19, 1988), holding that:

[T]he test for immunity should be whether the law was clear in relation to the specific facts confronting the public official when he acted. *Colaizzi v. Walker*, 812 F.2d 304, 308 (7th Cir.1987) (*quoting Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir.1986)).

It is well-settled that summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Reardon v. Wroan*, 811 F.2d 1025, 1027 (7th Cir.1987); *Donald v. Polk County*, 836 F.2d 376, 378–79 (7th Cir.1988).

As this court has explained, "appellate review of a denial of summary judgment on the issue of qualified immunity is limited to the legal question of whether the law was well-established at the time of the conduct." *Wade*, 804 F.2d at 70; *Mitchell*, 472 U.S. at 520, "[I]f there are issues of disputed fact upon which the question of immunity turns, or if it is clear that the defendant's conduct did violate clearly established norms the case must proceed to trial." *Green v. Carlson*, 826 F.2d 647, 652 (7th Cir.1987); *Conner*, at 387.

Moreover, it is also clear that "appellate review of a denial of summary judgment on the issue of qualified immunity is limited to the legal question of whether the law was well established at the time of the conduct." *Wade*, 804 F.2d at 70; *Klein v. Ryan*, 847 F.2d 368, 371 (1988); *see Mitchell*, 472 U.S. at 528, 105 S.Ct. at 2816.

Judge Duff found that expecting Jones and Elrod to "have divined the unconstitutionality of their conduct from pre–1981 cases holding law enforcement officials liable for actions resulting in the arrest or detention of persons without probable cause … [was] … asking too much." The district court correctly found that the case law at the time suggested that *some* pre-release identification procedures could be so time-consuming as to violate the fourth amendment.

Because we agree with the district court —that their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known—we affirm the order granting summary judgment based on the qualified immunity of the defendants.

## IV. DECERTIFICATION OF CLASS ACTION

■ Lewis initially filed a class action seeking to represent all CCDOC prisoners who were brought to court in Cook County, discharged by a judge, and then returned to the jail for out-processing and release.[10]

Although Judge Marshall originally certified the class, he later found that the Sixth District had a case-by-case approach rather than a "systematic" policy of returning discharged prisoners to the CCDOC. He thus reversed his earlier decision and decertified the class, determining that Sandy Lewis only had standing to represent mistaken identity cases, not all prisoners who were detained. The district court ruled that "the ambiguous and equivocal evidence … is

10. The class certified on November 10, 1982 was

defined as "all persons who are now or may in

insufficient to establish that the class is so numerous that joinder of all its members is impracticable." Consequently, he found that the proposed class did not meet the numerosity requirement of Fed.R.Civ.P. 23.

Lewis appeals the decertification order, claiming that it was based on an erroneous finding of fact. He requests that the class be recertified.

This court has already determined that we lack jurisdiction over plaintiff's appeal of Judge Marshall's decertification order under 28 U.S.C. § 1292(a). *Lewis v. Tully,* 804 F.2d 143 (7th Cir.1986) (unpublished). Thus, with respect to Lewis' class action, we must accept the district court's determination that he did not have the standing to seek the relief he sought because he did not have any basis to act for his class. Further, we repeat that we must dismiss this claim for lack of jurisdiction.

## V.  CONCLUSION

We agree with our earlier rulings in *Moore, Gramenos* and *Murray* and can conceive of instances where the administrative process involved in releasing an individual from custody could violate his fourth amendment rights. Judge Duff acknowledged the complexity of this question in his memorandum opinion entitling Jones and Elrod (individually) to summary judgment. He wrote:

> No court has ever held jailers liable for delaying a prisoner's release in order to verify his identity and ensure that they have no further basis for holding him. Even if, as plaintiff argues, it is possible to infer from *Murray* and *Whirl* that some pre-release identification procedures could be so time-consuming as to violate the fourth amendment, whether particular procedures for accomplishing this task are too drawn-out is a different and more difficult question than whether law enforcement officials may arrest a person without probable cause (*Murray*) or let him languish in his cell for months after the expiration of his sentence (*Whirl*).

the future be held in custody of the Cook County Department of Corrections jail and who are discharged by any judge sitting at any location in Cook County other than the First District of

There must be a reasonable time allowed for processing the release of a prisoner when the basis for detention has ended. However, based on the facts in this case, it is a question for the jury to determine whether the time involved in processing the release of Sandy Lewis was reasonable. In order to allow a jury to make such a determination, the decision of the district court in granting a directed verdict is REVERSED and the § 1983 claim against the sheriff in his official capacity is REMANDED for retrial. The issue of class certification is DISMISSED for lack of jurisdiction. The orders granting summary judgment are AFFIRMED.

the Circuit Court of Cook County but are returned to the Cook County Department of Corrections jail for release."