Ronald **PORTIS, Madric Lance, and Emmett Lynch, individually and on behalf of a class, Plaintiffs,**

v.

**CITY OF CHICAGO, a municipal corporation; and Terry G. Hillard, Superintendent of the Chicago Police Department, Defendants.**

**No. 02 C 3139.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 26, 2007.

---

Michael I. Kanovitz, Loevy & Loevy, Thomas Gerard Morrissey, Chicago, IL, for Plaintiffs.

Amy Renee Skaggs, Department of Law, Brian Joseph Murray, June K. Ghezzi, Morgan Reid Hirst, Jones Day, Mara Stacy Georges, Corporation Counsel, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiffs Ronald Portis, Madric Lance and Emmett Lynch have brought a second amended class action complaint against defendant City of Chicago [1] alleging that the City has a practice of unconstitutionally delaying release of persons arrested for non-jailable ordinance violations that are punishable by fine only. The court has certified a class defined as:

> All persons who, from May 1, 2000, through September 3, 2004, were arrested on ordinance violations which carry no jail time in the City of Chicago and who were detained for more than two hours after all administrative steps incident to the arrest, except non-discretionary ministerial acts, were completed. The class is further limited to those persons who (1) were not fingerprinted by defendants after being brought into custody; and (2) were eligible for release on personal recognizance bond pursuant to Rule 553(d) of the Illinois Supreme Court.

Plaintiffs have moved for summary judgment of liability against the City. For the reasons explained below, that motion is denied.

---

1. Defendant Hillard and all other originally named individual defendants have been dismissed by plaintiffs pursuant to Fed.R.Civ.P. 41.

### SUMMARY JUDGMENT STANDARDS

A movant is entitled to summary judgment under Fed.R.Civ.P. 56 when the moving papers and affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Becker v. Tenenbaum–Hill Associates, Inc.,* 914 F.2d 107, 110 (7th Cir.1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing summary judgment. *Fisher v. Transco Services–Milwaukee, Inc.,* 979 F.2d 1239, 1242 (7th Cir.1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "There mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonable find for [the non-moving party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

To help make this task easier, the Northern District of Illinois has adopted Local Rule ("L.R.") 56.1 which requires certain filings in support of an in opposition to motions for summary judgment. Specifically, L.R. 56.1(a)(3) requires the movant to provide a statement of material facts as to which it contends there is no genuine issue. The statement must be in a form of numbered paragraphs with specific references to the parts of the record or other supporting materials relied upon. The non-movant must reply to each paragraph, either admitting that the statement is uncontested or stating that it disagrees, specifically citing to supporting materials showing there is a genuine factual dispute. L.R. 56.1(b)(3)(A), (B). The non-movant may also supply a statement of additional facts, if any, that would defeat summary judgment, again in the form of numbered paragraphs with supporting citations. L.R. 56.1(b)(3)(C). The moving party must then reply to the statement of additional facts paragraph by paragraph, admitting the statement or contesting it, with specific citations to supporting materials.

As has become all too often the case, *Thompson v. Waukesha State Bank,* 510 F.Supp.2d 453 (N.D.Ill.2007), neither party has abided by the letter or spirit of the rule. Plaintiffs L.R. 56.1(a)(3) statement contains 103 numbered paragraphs. Each numbered paragraph, however, contains multiple statements of fact. While this is a violation of the Rule that could justify striking plaintiffs' filing, the violation is highly technical and somewhat understandable given the nature of the case. The "facts" in each numbered paragraph are grouped together in a logical manner and, in most instances, are supported by the same reference to the record or supporting materials, thus allowing the court to determine if there is support for the "fact" asserted. In this respect at least, plaintiffs' filing complies with the spirit if not the letter of the Local Rule.

The same cannot be said for defendant's L.R. 56.1(b)(3) responses which, consistent with the manner in which defendant has litigated the instant case, are

uniformly improper and intended to complicate rather than simplify the court's task. A few examples highlight this problem. Plaintiffs' Statement no. 2 states:

B. *The named plaintiffs' arrests and detentions:*

2. On August 20, 2001, the City of Chicago charged plaintiff Ronald Portis with violating a municipal ordinance by peddling without a license and by failing to display a peddler's badge. Ordinance § 4–244–030, § 4–244–100; Exh. 1 (Portis arrest report). Violations of this ordinance are punishable only by a fine, *i.e.,* no jail time may be imposed. Exh. 2 (ordinance).

The appropriate response to the paragraph is simple. Defendant should either admit plaintiff Portis's arrest for peddling without a license and failing to display a peddler's badge, or controvert those facts with citations to supporting materials or perhaps a statement that plaintiffs' citations do not support the statement. In addition, it is a simple matter to admit or deny that the ordinance cited is punishable by fine only.

Instead of supplying such a response, however, defendant filed the following:

*DEFENDANTS' RESPONSE:* Unsupported *, immaterial, misleading and objectionable. Further, ¶ 2 violates Local Rule 56.1 by including multiple statements of fact within the same paragraph.** Immaterial in that plaintiffs are not challenging the propriety of Mr. Portis's arrest, only the length of his detention. Misleading in that plaintiffs' implication in the second sentence that individuals arrested for violation of municipal ordinances that are punishable by fine only should not be detained or placed in jail a jail cell at the time of processing has been specifically rejected by the United States Supreme Court. *See Atwater v. City of Lago Vista,* 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001).

---

FN* Assertions without specific reference to the record violate LR 56.1(b)(3)(B), which requires "references to the affidavits, parts of the record, and other supporting materials relied upon." *See Malec v. Sanford,* 191 F.R.D. 581, 582 (N.D.Ill.2000) ("[f]actual allegations not properly supported by citation to the record are nullities"); *id.,* at 583 (Rule 56.1 statements are "roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own"). Consequently, each time that defendants point out that one of plaintiffs' facts is unsupported, defendants respectfully request that this Court either strike or disregard the fact in ruling on plaintiffs' summary judgment motion.

FN* * Courts in this district have ordered strict compliance with Local Rule 56.1, and held that the "compounding of facts into an amalgamated paragraph is not permissible." *Maclin v. A.M. Bus Co., Inc.,* No. 04 C 4176, 2006 WL 463370, *2 (N.D.Ill. Feb. 22, 2006)(disregarding all paragraphs including more than one statement of fact); *Malec,* 191 F.R.D. at 583 ("it is inappropriate to confuse the issues by alleging multiple facts in a single paragraph in hopes of one's opponent missing one"). Consequently, each time that defendants point out that one of plaintiffs' paragraphs includes multiple statements of facts in violation of Local Rule 56.1, they respectfully request that this Court either strike or disregard that fact in ruling on plaintiffs' summary judgment motion.

Aside from pointing out that plaintiffs' statement contains multiple statements of fact, this response is wholly improper. An L.R. 56.1(b) response is not the platform to present a party's argument. Whether the fact asserted is material or whether plaintiffs' are "challenging the propriety of Mr. Portis's arrest," is argument to be presented in defendant's brief, but not in the L.R. 56.1(b) response, where the only question is whether the fact asserted is contested. Thus, there is no reason to be citing case law in a 56.1 response. This is particularly so for the instant paragraph

because, as plaintiffs note, defendant has already admitted the facts asserted in its answer to the second amended complaint. Defendant's response is simply an improper attempt to avoid admitting that which is uncontestable.

Another of defendant's obstructionist attempts to avoid admitting uncontestable facts is its response to plaintiffs' Statement of Fact No. 14 which states:

14. The named plaintiffs represent a class of:

all persons who, from May 1, 2000 through September 3, 2004, were arrested on ordinance violations which carry no jail time in the City of Chicago and who were detained for more than two hours after all administrative steps incident to the arrest, except non-discretionary ministerial acts, were completed. The class is further limited to those persons who (1) were not fingerprinted by defendants after being brought into custody; and (2) were eligible for release on personal recognizance bond pursuant to Rule 553(d) of the Illinois Supreme Court.

Order, docket no. 380; docket no. 378–1, at 4.

Again, this statement cannot be contested, because the court certified the class as defined in ¶ 14. Nonetheless, defendant's response states:

*DEFENDANTS' RESPONSE:* Controverted and objectionable. The City disputes that this class action should have been certified (*see* Dkt. No. 995), disputes that two hours has any constitutional significance and disputes that plaintiffs' characterization of administrative steps has any legal basis. Paragraph 14 states a legal conclusion as to

whether the named plaintiffs "represent" the class certified in this lawsuit.

In its response brief in opposition to plaintiffs' motion for summary judgment, defendant proudly proclaims that it has contested 100 of plaintiffs' 103 Statements of "Undisputed" Facts.[2] Unfortunately for defendant (and the court) of the 100 responses, at least 70 of them contain the same type of improper argument illustrated above. Based on the shear volume of improper responses the court is tempted to simply strike all of them and consider all of the facts asserted in plaintiffs' L.R. 56.1(a) Statement admitted. But that would be unfair, despite defendant's obstructionist tactics, because it is also true that many (although not nearly as many) of plaintiffs' statements contain improper argument immersed within the statement of the asserted undisputed "facts."

These failures by the parties have "utterly thwarted the usefulness of the L.R. 56.1 Statements as roadmaps to assist the court in pointing to the specific undisputed evidence that supports the parties' position." *Ogdon v. Hoyt,* 409 F.Supp.2d at 982, 986 (N.D.Ill.2006). This leaves the court with the dauntingly difficult task of negotiating the record on its own. It has endeavored to do so, disregarding the improper statements and responses. *Ogdon,* 409 F.Supp.2d at 987; *Ogborn v. United Food and Commercial Workers, Local No. 881,* 2000 WL 1409855 at *3 (N.D.Ill.2000). As discussed below, the court denies plaintiffs' motion despite the strong possibility that had this motion been prosecuted properly plaintiffs would have been able to demonstrate that defendant has violated the constitutional rights of the plaintiff class.

---

2. The fact that defendant could not find a single uncontested factual assertion (aside from jurisdictional statements) in plaintiffs' filing demonstrates defendant's evasiveness.

## DISCUSSION

The plaintiffs in this case are individuals who have been arrested for violations of non-jailable ordinances under the City of Chicago's Municipal Code. The violations are punishable by fine only, not detention or incarceration. Although plaintiffs could have been simply issued a ticket for the offenses, it is undisputed that each was properly placed under custodial arrest. It is also undisputed that once the necessary administrative steps incident to the arrest are completed, all such persons arrested are eligible to be released on an individual recognizance bond ("I-bond") pursuant to Ill. Supp. Ct. Rule 553(d). Plaintiffs allege that defendant has a custom or practice of subjecting such arrestees to a constitutionally unreasonable period of detention after all such necessary administrative steps have been completed, and all that remains to be done is issue the bond and release the arrestee.

For the most part, defendant has demonstrated an inability to comprehend or unwillingness to accept the exact nature of plaintiffs' theory of the case, repeatedly arguing that under *County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), any length of detention up to 48 hours is preemptively reasonable. *See Portis v. City of Chicago,* 2004 WL 1284010 at *2 n. 1 (N.D.Ill.2004). The court has rejected this argument four times and admonished defense counsel against raising it again. *Id.* Apparently counsel was unfazed by the court's warning, because defendant again tries to miscast plaintiffs' theory and then rely on *County of Riverside* to defeat plaintiffs' claim.

This time defendant characterizes plaintiffs' claim as suggesting that persons arrested for non-custodial ordinance violations "should simply be given a ticket—either when they are arrested, or at some other point in their processing before placement in a holding cell...." Defendants then disingenuously state that plaintiffs argue that "arrest itself, with attendant time in a cell is 'punishment.' " The defense then relies on *Atwater v. City of Lago Vista,* 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001), in which the Court held that custodial arrest, even for a minor non-jailable offenses, is constitutionally permissible if the arresting officer has probable cause to believe that an offense had been committed in his presence. *Id.* at 354, 121 S.Ct. 1536. The Court also held that processing the arrestee attendant to the arrest is constitutionally permitted. *Id.* That brings defendant back to its argument under *County of Riverside,* that it has up to 48 hours to complete the administrative procedures after the arrest.

Of course, plaintiffs have never claimed that their arrests were improper, or that defendant had no right to hold them for a reasonable time to complete the administrative procedures incident to the arrest. Plaintiffs' claim is that they were held too long after all necessary administrative procedures had been successfully completed and the decision to release them on an I-bond had been made. Defendant's counsel's inability or strategic unwillingness to comprehend this is arguably sanctionable and, in any event, renders much of defendant's memorandum simply useless.

As this court has previously stated (*Portis,* 2004 WL 1284010 at *2), the legal issues in this case are controlled by the Seventh Circuit's opinion in *Chortek v. City of Milwaukee,* 356 F.3d 740 (7th Cir. 2004), in which, like the instant case, the plaintiffs were arrested for non-custodial ordinance violations. Unlike the instant case, all 15 plaintiffs in *Chortek* were arrested at the same place and time. They were taken to a prisoner processing station where they were subjected to the standard

processing routine, which involved a series of procedures relating to booking, searches, paperwork and release. It was undisputed that extensive paperwork was involved that easily required six to eight hours to complete. *Id.* at 744. Six of the plaintiffs were detained over eight hours, twelve over six hours, and all but one over four hours. In reviewing the plaintiffs' claim for unreasonable detention, the *Chortek* court noted that "*County of Riverside* is generally invoked to evaluate cases involving extended detention because the 48 hour framework governs the length of time which may elapse before a probable cause hearing." *Id.* at 746. A finding of probable cause is necessary for any extended restraint of liberty following arrest. *Id.* Significantly, the *Chortek* court recognized that in the case before it, like the instant case, "neither extended detention of the plaintiffs nor probable cause hearings were contemplated. Rather, police held the plaintiffs only while they completed their processing." *Id.* Thus, the *Chortek* court found *County of Riverside* relevant to its discussion only because in that case the Court noted that unreasonable delay within a presumptively reasonable period may be constitutionally troublesome if the delay was occasioned by an improper purpose, such as gathering additional evidence to justify the arrest, or a delay motivated by ill will against the arrested individual, or delay for delay's sake. *Id.*

Most importantly for the instant case, the *Chortek* court reaffirmed its earlier opinions in *Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336 (7th Cir.1985), and *Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432 (7th Cir.1986), which suggested that a delay over four hours after a warrentless arrest for a minor non-custodial offense would be presumptively unreasonable, calling for an explanation by the defendant. In *Chortek,* a satisfactory explanation was given, the facts of which

were uncontested by the plaintiffs. Thus, summary judgment for the defendants was appropriate. *Id.* at 747–48.

 Under *Chortek,* a delay of over four hours to complete even the appropriate administrative steps incident to the arrest is "suspect." In the instant case, however, plaintiffs do not challenge the amount of time defendant took to complete the appropriate steps, even though these steps took more than four hours. Instead, plaintiffs claim that they were detained them more than two hours *after* completion of all necessary steps except ministerial steps such as signing the bond.

As noted in *Chortek,* "the reasonableness of a length of detention typically 'is a question best left open for juries to answer based on the facts presented in each case.'" *Id.* at 747 (quoting *Lewis v. O'Grady,* 853 F.2d 1366, 1370 (7th Cir. 1988)). Thus, resolution of the instant case on summary judgment is appropriate only if the administrative steps taken by defendant and the order in which they were taken are undisputed. Only then could the court determine when the appropriate steps incident to the arrest were completed, and whether plaintiffs should have been released as a matter of legal right. Although this seems like a simple matter, wading through the voluminous record without the aid of appropriate L.R. 56.1 statements has left the court with questions as to when that point in time occurs.

Although the parties agree on very little, the court's examination of the record reveals the following typical procedures. First, upon arrest the arrestee is searched by the arresting officer and then transported to the district police station, where a second, more thorough search is conducted. Depending upon whether the arresting officer's vehicle has a computer, a

name/warrant check may be conducted prior to or during transport. In either event, upon arrival at the station, the arresting (or transporting) officer performs a name/warrant check at the station's computer terminal and, assuming no outstanding warrant is found, prepares an arrest report and a criminal complaint. The arrestee is then left in a holding area while the arresting officer takes the paperwork to a desk sergeant (or any sergeant deputized as a Clerk of the Circuit Court of Cook County) who reviews it for accuracy and grammar, and witnesses the arresting officer's signature on the complaint. According to the Chicago Police Department General Orders ("GO"), the desk sergeant is required to check that: (1) the name check has been performed; (2) the court complaint and arrest report are properly completed and the case is assigned to the proper court; (3) the court complaint is properly sworn and witnessed; and (4) the legal citation for the alleged offense in the signed complaint is on all copies of the arrest report.

The paperwork is then brought by the arresting officer to a watch commander. At this time the watch commander confirms to the best of his ability that the arrestee has been adequately identified and that there are no outstanding warrants. According to plaintiffs, at this time the watch commander makes an initial determination of probable cause, which is simply a determination that the charge is appropriate based on the arresting officer's narrative in the arrest report. At this step, if the watch commander is satisfied with the name check, he determines whether to fingerprint the arrestee. During the period in question, the Chicago Police Department GOs did not require fingerprinting of persons arrested for violations of city ordinances punishable by fine only. (The General Orders have since been amended to require fingerprinting of all arrestees.) Therefore, unless there was a problem with the identification, the arrestee would not be fingerprinted.[3]

It is at this point that plaintiffs argue that the class members were eligible for release. According to plaintiffs, the Chicago Police Department GOs provide that an individual is considered charged when (1) the watch commander makes the decision to waive results of fingerprinting, and (2) the "formal recording on an arrest report of the legal citations of offenses alleged in the signed complaint" is made. Plaintiffs argue that because fingerprinting of the class members had been waived, the charges could not be upgraded or changed because no new information could come from running another name check. At that point, plaintiffs argue that the processing of class members should have been diverted from that of other arrestees, because at that point the class member is legally eligible for release. Thus, plaintiffs argue that at that point the watch commander should also have performed all of his ordinary remaining tasks such as initialing the "final approval of charges" box on the arrest report and authorizing the issuance of an I-bond.

While defendant does not strenuously argue that plaintiffs could not have been released at that point, it instead insists that the police department simply followed the same procedures for plaintiffs as it did for all other persons arrested during the class period. Therefore, after the watch commander made his/her initial review, the arresting officer would get the paperwork back from the watch commander, remove the arrestee from the holding area and take the arrestee to the lockup-area. At this point a central booking ("CB") number

---

**3.** Arrestees who were fingerprinted for any reason are excluded from the instant class.

was assigned, and the arresting officer could return to the street.

Once the arrestee was in custody of the lockup-area, another name and warrant check was performed. Lockup processing was performed, including inventory of possessions, a medical check for conditions that might be relevant to detention, and permission was given to the arrestee to make a telephone call. Once the lockup processing was complete, the paperwork was taken back to the watch commander for final approval of charges. After final approval of charges was made, an I-bond was completed and the arrestee is eligible for release. According to plaintiffs, placing the arrestee in the lockup resulted, on average, of an additional 4.4 hours of detention.

Defendants argue that by following the same procedures for all arrestees, the system provides a series of name/warrant checks and double name/warrant checks, assuring that the police correctly identify the arrestee and that no warrants are outstanding prior to release. Plaintiff, on the other hand, argues that once a decision not to fingerprint was made, no information could be obtained from repeatedly running the same name through the computer system. While it appears that plaintiffs' position is theoretically sound, there is evidence in the record that in practicality, watch commanders often made the initial finding of probable cause and/or the decision not to fingerprint pending the outcome of the initial name check. In other words, despite the requirements of the GOs, in practice the charging paperwork (arrest report and complaint) were brought to the watch commander for initial review prior to completion of the initial name/warrant check. The watch commander would then approve the paperwork pending the name check, and the arrestee would be placed in the lockup until such time as the name check could be completed. Thus, arrestees could receive a CB number prior to completion of the initial name/warrant check.

■ To establish a claim against defendant under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), plaintiffs must show that execution of a government policy or custom "by its lawmakers or by those whose edicts or acts may fairly be said to represent an official policy" inflicts the injury about which they complain. *Chortek*, 356 F.3d at 748. Unconstitutional policies or customs take three forms: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that, although unauthorized, is so permanent and well-settled that it constitutes a custom or usage with the force of law; or (3) a person with final policy making authority caused the injury. *Id.*

Plaintiffs attempt to proceed under the second method, arguing that the Chicago Police Department had a widespread practice of detaining, for excessive periods, persons arrested for fine-only ordinance violations after a CB number had issued, the point in time in which plaintiffs claim release could and should have been effected. Because there is a genuine dispute as to which of the administrative procedures had been completed by that point in the process, this court is unable to determine as a matter of law that plaintiffs were entitled to be released at that time. Accordingly, plaintiffs' motion for summary judgment is denied.

### CONCLUSION

For the reasons set forth above, plaintiffs' motion for summary judgment is denied.